UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

BOBBY LYNN SHULTS            )
                             )
V.                           )    NO. 2:03-CV-364
                             )    (NO. 2:01-CR-51)
UNITED STATES OF AMERICA     )


REPORT AND RECOMMENDATION

This is an action to set aside or correct a sentence pursuant to 28 U.S.C. § 2255.[1] Petitioner currently is serving a one-hundred-month sentence based upon his plea of guilty to a charge of conspiring to distribute five hundred grams or more of cocaine in violation of 21 U.S.C. § 841(a)(1). His petition asserts that his guilty plea was invalid, that his trial counsel was ineffective, and that he was and is actually innocent of the charge to which he pleaded guilty.

Senior United States District Judge Thomas G. Hull earlier filed a Memorandum Opinion[2] in which he disposed of each of petitioner's allegations, save one: whether petitioner's guilty plea is invalid due to pressure and coercion by his attorney.[3] District Judge Hull referred that issue to the Magistrate Judge for an evidentiary hearing and a

---

[1] Although this action originally was filed by the petitioner *pro se*, Attorney Paul Whetstone subsequently was appointed to represent him in this matter.

[2] Doc. 7.

[3] Memorandum Opinion, Doc. 7, p. 17.

Case 2:01-cr-00051   Document 116   Filed 11/02/05   Page 1 of 12   PageID #: 1

report and recommendation.[4] That evidentiary hearing was held on October 27, 2005.

## I. *Legal Standards*

(1) Standard of Review

In order for petitioner to prevail under § 2255, the record must reflect an error of constitutional magnitude that had a substantial and injurious effect on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993); *Mayes v. United States,* 93 F. Supp. 2d 882, 886 (E.D. Tenn. 2000). A petitioner collaterally attacking his sentence or conviction pursuant to § 2255 has the burden of proving the grounds for collateral attack by a preponderance of the evidence standard. *Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980). *See also David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998) ("The burden is on the petitioner to make out a case for section 2255 relief.").

(2) *Strickland* Test

Criminal defendants have a right to the effective assistance of counsel at trial. *Strickland v. Washington*, 466 U.S. 668 (1984). A claim involving the ineffectiveness of counsel must be analyzed under a two-pronged standard, under which a petitioner must demonstrate: 1) deficiency of performance on the part of his attorney and 2) actual prejudice flowing therefrom. *Id.* at 687. A court considering ineffectiveness claims must observe certain guidelines. In assessing counsel's performance, a court must presume, in view of the circumstances, that counsel's questioned actions might have been sound

---

[4]*Id.*, pp. 17-18.

2

strategic decisions. *Id*. at 689. Counsel's performance will be considered constitutionally deficient only in instances where the challenged actions are "outside the range of professionally competent assistance." *Id*. at 690.

A finding of serious attorney incompetence will not justify setting aside a conviction, however, absent prejudice to the defendant. *Id*. at 691-92. To show prejudice in the context of a guilty plea, a petitioner must demonstrate a reasonable probability that, without counsel's alleged errors, he would not have pled guilty, but would have insisted on standing trial. *Hill v. Lockhart*, 474 U.S. 52, 56, 59 (1985). Unless there is a likelihood of a successful defense to the charge, no alleged error by counsel is a basis for relief. *Id*. at 59. Indeed, counsel is constitutionally ineffective only if a performance which fell below professional standards caused the defendant to lose what he "otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

(3) <u>Principles Governing Guilty Pleas</u>

Before accepting a guilty plea, a court is required, under *Boykin v. Alabama*, 395 U.S. 238 (1969), to determine whether a defendant understands that he is waiving his right to a trial by jury, his right to confront the witnesses against him, and his privilege against self-incrimination. *Id.* at 243-44. Whether a plea is voluntarily and intelligently entered depends upon the particular facts and circumstances of each case. *Brady v. United States*, 397 U.S. 742, 749 (1979). A defendant must be sufficiently aware of the relevant circumstances, as well as the probable and direct consequences of his plea. *Id*. at 748.

3

A plea is not voluntary if it is induced by threatened physical harm or by mental coercion overbearing the will of the defendant. *Id.* at 750. *See also, Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A plea of guilty, if induced by promises or threats that deprive it of the character of a voluntary act, is void."); *Ray v. Rose*, 491 F.2d 285, 290 (6th Cir. 1974) ("If the allegations are correct, petitioner's counsel … deliberately misled and coerced him. It is inconceivable to us how a plea entered under these circumstances could be either intelligent or voluntary.)

## II. *Discussion*

Petitioner framed the issue to be decided at the hearing as follows: "Whether the Petitioner's plea of guilty should be held involuntary as the result [of] being coerced into pleading guilty by his *de facto* attorney, Ms. Susanna Laws Thomas."[5] Prior to the commencement of the hearing, petitioner's counsel suggested that petitioner's mental status necessarily would be a consideration in determining whether petitioner's plea of guilty was coerced or not. With that statement, the Court agrees.

Petitioner's theory or argument can be summed up as follows:

1. He is mentally "slow," having an IQ of anywhere between forty-five and sixty-five, and is therefore easily susceptible to being overreached;

2. He is illiterate, being able to read and write only his name and nothing else;

3. At the time of his arrest on May 31, 2001, petitioner believed he was operating as an undercover informant on behalf of the FBI and the Drug

---

[5]Doc. 19.

4

Task Force, and therefore was actually innocent of the charges for which he subsequently was indicted;

4. Defendant was indicted for conspiring to distribute five hundred grams of cocaine, and possessing a firearm in relation to a drug-trafficking offense.

5. This Court appointed Attorney Don Spurrell, a member of the CJA Panel of this Court, to represent him;

6. Subsequently, Attorney Susanna Laws Thomas visited him at the jail and announced that she now was representing him;

7. Attorney Thomas was hired by George Mooneyham, a defendant in another criminal prosecution in this Court, an acquaintance of petitioner, and a close friend of Attorney Thomas;

8. George Mooneyham, who was them incarcerated in the same facility as petitioner, told petitioner that he would hire Attorney Thomas to represent him "so long as he kept his mouth shut," and Attorney Thomas essentially told him the same thing;

9. Petitioner really did not know what to do at that point except to allow Attorney Thomas to represent him;

10. Petitioner told Ms. Thomas that he wanted a trial because, at the time of his arrest, he "was working for the law";

11. At Attorney Thomas' request, petitioner provided to her a list of names of individuals which the FBI wanted him to "set up";

12. One of the names on that list, Harold Grooms, was a drug dealer and a friend of George Mooneyham, and father of Irwin Stamper, one of petitioner's co-defendants;

13. Attorney Thomas periodically told petitioner to "keep his mouth shut" or, otherwise, he would get in trouble with "her people";

14. "Her people" were Stamper (a co-defendant), George Mooneyham, and Harold Grooms;

15. Petitioner believed that if he talked about Stamper and Grooms, he would be assaulted in the jail, or perhaps his family would be hurt;

16. Attorney Thomas did not approach the government to see if petitioner could provide "substantial assistance to authorities" and thus possibly obtain a downward departure under the sentencing guidelines.

17. He pleaded guilty to certain of the charges for which he was indicted only because Attorney Thomas told him to do so and, as noted above, he asserts that he then avowed he was actually innocent of the charges against him because he was serving as an informant for the government at the time of his arrest.

The following individuals testified on behalf of the petitioner: Susanna Laws Thomas Webb[6]; Attorney Don Spurrell; Christina McCarter, petitioner's sister; Attorney Nikki Pierce of the Federal Defender Services of East Tennessee; and the petitioner.

Susanna Laws Webb's law license has been suspended, but for matters unrelated to the representation of Mr. Shults. Ms. Webb testified that she was paid Two Thousand Five Hundred Dollars by Mr. Shults' "family" to represent him, testifying that it was a "collaborative effort" of Mr. Shults' family. She unequivocally testified that no one else contacted her with regard to representing petitioner, including George Mooneyham. She acknowledged that she and Mr. Mooneyham were long-time "good friends," but flatly denied that she and Mr. Mooneyham were ever more than good friends. She had represented Mr. Mooneyham in state court, once in Chattanooga and once in Cocke County.

---

[6]Susanna Laws Thomas has married in the intervening years, and she is now Susanna Laws Webb.

This emphasis on Mr. Mooneyham, both by petitioner and this Court, exists because of Ms. Webb's actions in another prosecution in this Court, *United States v. Sheridan McMahan and George Mooneyham*, No. 2:00-CR-65. Attorney Nikki Pierce represented the defendant McMahan, and several other attorneys represented Mr. Mooneyham, none of whom was Ms. Webb. The co-defendant McMahan, unbeknownst to his attorney, Mrs. Pierce, was going from one lawyer to another in Newport, Tennessee, seeking to provide some sort of formal statement regarding his culpability, versus that of his co-defendant Mooneyham, with respect to the charges pending against them. He finally found his way to Ms. Webb, and she arranged for Mr. McMahan to provide a sworn statement before a court reporter. Although Ms. Webb did not actually participate in Mr. McMahan's statement, she nevertheless arranged for it, and never communicated to Attorney Pierce that her client was in the process of thoroughly incriminating himself. To say the least, Mr. McMahan's statement precipitated a firestorm in this Court and Attorney Webb became a *persona non gratis* thereafter, a status which was relatively well-known in the community.

Thus, it is not difficult to appreciate the logic of petitioner's argument herein: Ms. Webb showed up at the jail, more or less out of the blue, announcing that she was representing Mr. Shults; she advised Mr. Shults that she had been hired by Mr. Mooneyham; Ms. Webb and Mr. Mooneyham were long-time friends; Mr. Mooneyham was a friend of Harold Grooms, and Mr. Shults had information that could implicate Mr.

7

Grooms in narcotics trafficking; in an effort to keep Mr. Shults quiet about Mr. Grooms and Mr. Stamper (Grooms' son), Mooneyham hired Ms. Webb and threatened Mr. Shults with retribution if he should ever talk; Mr. Shults pled guilty to certain of the charges because he was fearful and mentally susceptible to his attorney's coercive tactics.

Ms. Webb undeniably has a lot "of baggage," as Assistant United States Attorney M. Neil Smith phrased it, but that "baggage" is merely one factor of many this Court should consider in determining whether Mr. Shults has carried his burden of proving that his plea was involuntary and the result of coercion by his attorney. Another factor which must be considered, along with all the other evidence, is the quality of legal work Ms. Webb did on behalf of Mr. Shults. Mr. Shults was caught red-handed, so to speak. He had one defense only, the defense of "Public Authority," *viz*, that he was acting as an undercover informant during the drug transaction for which he was arrested. He gave a statement to Drug Task Force Agent Terry Wolfe, and Ms. Webb filed a motion to suppress that statement. That motion to suppress was heard before this Magistrate Judge, and it was vigorously presented and argued. It always was essentially petitioner's word against that of Agent Wolfe regarding petitioner's status as an informant during the transaction for which he was arrested and indicted; any competent criminal defense attorney would realize that a swearing contest between Agent Wolfe and petitioner was one that the petitioner likely would lose. And when Ms. Webb failed to prevail on her motion to suppress, petitioner's chances of persuading a jury that he was working on behalf of the

8

government became even more remote.

Ms. Webb negotiated a plea agreement with the government in which the firearms charge against petitioner was dismissed; petitioner pleaded guilty only to conspiring to distribute five hundred or more grams of cocaine. Had petitioner gone to trial on the entire indictment and been convicted of both the conspiracy and firearms counts, he faced far more time in jail than he would have if he confronted only the conspiracy count. Thus, the dismissal of the firearms count was of significant benefit to the petitioner. Moreover, petitioner was sentenced to the extreme low end of the applicable guideline sentencing range. In other words, petitioner received the absolute lowest possible sentence absent a downward departure.

In short, there is nothing about Ms. Webb's performance as petitioner's lawyer that remotely suggests that she in any way "sold him out." In fact, it appears that she performed a rather good job on behalf of petitioner. Nevertheless, neither is this dispositive of the issue of whether the petitioner involuntarily pleaded guilty to conspiring to distribute cocaine; a foolish decision or not, petitioner had the right to go to trial in an attempt to persuade the jury that he was acting on behalf of law enforcement officers at the time of his arrest. To emphasize what was said earlier, Ms. Webb's performance is but one factor that must be considered with all the other evidence.

Petitioner's sister, Ms. McCarter, testified that there was no decision made by her family to hire an attorney for her brother, and that no one in her family knew Susanna

9

Laws Thomas. Further, she testified that her family was so poor that no one could afford to pay a twenty-five-hundred-dollar fee to hire an attorney.

At first, this Magistrate Judge was concerned that either Ms. Webb was lying, or Ms. McCarter was lying. However, after reviewing the testimony, it is not quite so stark as that. Ms. McCarter's mother and father had been separated for a number of years, and Ms. McCarter primarily looked after her father's affairs. Although Ms. McCarter was of the opinion that her mother could not, and did not, hire Ms. Webb, nevertheless she acknowledged that she was not able to assert, on personal knowledge, that her mother did not do so. Further, at all pertinent times, petitioner had lived with his mother, so obviously there was a close relationship between them and some sense of maternal responsibility. Moreover, petitioner's mother is still alive, and her testimony was not offered, nor was the testimony presented of any other sibling of petitioner. Recalling that preponderance of the evidence is the applicable standard, this Court simply cannot find by a preponderance of the evidence that Ms. Webb's testimony was false.

In any event, even if it be assumed that Mr. Mooneyham paid for Ms. Webb's representation of petitioner (which this Court does *not* find to be a fact), that does not *per se* fatally compromise Ms. Webb's representation of petitioner. As aforesaid, she vigorously represented petitioner, and did the best she could with the facts as they were. But did she coerce petitioner into pleading guilty when he wanted to go to trial? Again recalling that preponderance of the evidence is the standard, this Court simply cannot find

10

Case 2:01-cr-00051  Document 116  Filed 11/02/05  Page 10 of 12  PageID #: 10

that petitioner was coerced into pleading guilty. He is illiterate, to be sure; and he perhaps is borderline mentally retarded. But after observing petitioner on the witness stand and listening to his testimony, this Court believes that he was and is quite capable of understanding normal speech and making sound decisions on his own behalf. He is no stranger to the criminal justice system; he has a prior state conviction and a prior federal conviction. He pleaded guilty to the earlier federal offense, so he is acquainted with the attendant procedure. This Court concludes that petitioner elected to plead guilty as he did because he understood that he was being offered a very good deal, which in fact he was. He failed to carry his burden of proof that he pleaded guilty only because he was coerced into doing so by his attorney.

### III. *Conclusion*

The Magistrate Judge was instructed by Senior District Judge Hull to conduct an evidentiary hearing to determine whether petitioner's plea was involuntary because of counsel's coercion. The Magistrate Judge now reports that it was not; petitioner's plea was voluntary.

Any objections to this report and recommendation must be filed within ten (l0) days of its service or further appeal will be waived. 28 U.S.C. § 636(b)(1)(B) and (C). *United States v. Walters*, 638 F.2d 947-950 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985). If a party files objections to this report and recommendation, the attorney for that party shall provide a copy of such objections to the opposing counsel on the same day the

11

objections are filed, either by hand-delivery or facsimile transmission. The opposing counsel shall file his/her response to the objections within five business days of the date the objections are filed.

 Respectfully submitted,

            s/ Dennis H. Inman
           United States Magistrate Judge